IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BISHOP DISPLAY TECH LLC, | § |
| | § |
| Plaintiff, | § |
| | § C.A. No. 2:26-cv-256 |
| v. | § |
| | § JURY TRIAL DEMANDED |
| TCL ELECTRONICS HOLDINGS LTD.; TCL INDUSTRIES HOLDINGS CO., LTD.; TCL COMMUNICATION LTD.; TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD.; TCT MOBILE INTERNATIONAL LTD.; HUIZHOU TCL MOBILE COMMUNICATION CO. LTD.; TCL MOBILE COMMUNICATION (HK) CO., LTD.; TCL TECHNOLOGY GROUP CORP.; WUHAN CHINA STAR OPTOELECTRONICS SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD.; CHINA DISPLAY OPTOELECTRONICS TECHNOLOGY (HUIZHOU) CO., LTD.; AND TCL CHINA STAR OPTOELECTRONICS TECHNOLOGY CO., LTD., | § § § § § § § § § § § § § § § § § § § § § |
| Defendants. | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bishop Display Tech LLC ("Bishop" or "Plaintiff") files this Complaint against TCL Electronics Holdings Ltd. ("TCL Electronics"), TCL Industries Holdings Co., Ltd. ("TCL Industries"), TCL Communication Ltd. ("TCL Communication"), TCL Communication Technology Holdings Ltd. ("TCL Communication Tech."), TCT Mobile International Ltd. ("TCT Mobile"), Huizhou TCL Mobile Communication Co. Ltd. ("Huizhou TCL Mobile"), TCL Mobile Communication (HK) Co., Ltd. ("TCL Mobile HK"), TCL Technology Group Corp. ("TCL Technology"), Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.

("Wuhan CSOT"), China Display Optoelectronics Technology (Huizhou) Co., Ltd. ("Huizhou CSOT"), and TCL China Star Optoelectronics Technology Co., Ltd. ("TCL CSOT"), (collectively "TCL" or "Defendants") for infringement of U.S. Patent No. 6,525,798 (the "'798 patent"), U.S. Patent No. 6,787,829 (the "'829 patent"), U.S. Patent No. 6,801,293 (the "'293 patent"), U.S. Patent No. 6,816,208 (the "'208 patent"), U.S. Patent No. 6,850,303 (the "'303 patent"), and U.S. Patent No. 6,906,769 (the "'769 patent") (collectively, the "Asserted Patents").

## THE PARTIES

1.      Plaintiff is a Texas limited liability company with its principal place of business in the Eastern District of Texas.

2.      <u>TCL CSOT, Wuhan CSOT, and Huizhou CSOT</u>. On information and belief, TCL CSOT is a display company organized under the laws of the People's Republic of China having a regular and established place of business at No. 9-2 Tangming Ave., Guangming New District, Shenzhen, Guangdong, 518132, China. On information and belief, TCL CSOT is a majority shareholder and/or the only shareholder of Wuhan CSOT, a display company organized under the laws of the People's Republic of China having a regular and established place of business at Room 305, Building C5, Optics Valley Biological Innovation Park, No. 666, Gaoxin Ave., Donghu New Technology Development Zone Wuhan, Hubei, 430077, China. On information and belief, TCL CSOT owns, directs, and controls Wuhan CSOT. On information and belief, TCL CSOT is a majority shareholder and/or the only shareholder of Huizhou CSOT, a display and/or LCM company organized under the laws of the People's Republic of China having a regular and established place of business at No. 1 Yaoli Road, Chenjiang Street, Zhongkai High-tech Development Zone, Huizhou, Guangdong Province, 516006, China. On information and belief, TCL CSOT owns, directs, and controls Huizhou CSOT. References herein to "CSOT" without a

further modifier include TCL CSOT, Wuhan CSOT, and Huizhou CSOT. On information and belief, CSOT makes, sells, offers to sell, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for TCL display devices and third party display devices (e.g., Lenovo laptops, ViewSonic monitors) destined for the United States.

3.      On information and belief, TCL CSOT America Corp. is a company organized under the laws of Delaware with its principal place of business at 2025 Gateway Pl. #430, San Jose, CA 95110. On information and belief, CSOT America is a wholly owned subsidiary of TCL CSOT. On information and belief, TCL CSOT America Corp. sells, offers to sell and/or imports accused products (e.g., CSOT TFT-LCD displays and/or LCMs) in the United States.

4.      TCL Technology. On information and belief, TCL Technology is a corporation registered in China. On information and belief, TCL Technology's principal place of business is located at TCL Technology Building, No. 17, Huifeng Third Road, Zhongkai High-Tech Development Zone, Huizhou, Guangdong, P.R. China 516001. On information and belief, TCL Technology owns, directs, and controls TCL CSOT and TCL Wuhan. On information and belief, TCL Technology operates as an alter ego and essentially the same company as all TCL companies, especially as to TCL display products (e.g., TVs, phones, tablets). *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id*. ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id*. ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

5.      On information and belief, TCL Technology supplies relevant and/or infringing components (e.g., CSOT TFT-LCDs and LCMs) to TCL Electronics for TCL branded display products (e.g., TVs, phones, and tablets) and other third parties that incorporate the accused CSOT TFT-LCDs and LCMs into their display products (e.g., TVs, phones, tablets). For example, according to TCL Electronics' 2024 Annual Report, "One of the five largest suppliers of the Group is a subsidiary of TCL Technology, which is a major panel supplier in the PRC." TCL Electronics's 2024 Annual Report at 98.

6.      <u>TCL Electronics</u>. On information and belief, TCL Electronics is a limited liability company incorporated in the Cayman Islands. The registered address of TCL Electronics is P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. TCL Electronics' principal place of business is located at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, Hong Kong. Upon information and belief, TCL Electronics is a wholly owned subsidiary of TCL Industries. On information and belief, TCL Industries owns, directs, and controls TCL Electronics.

7.      According to its 2024 Annual Report, "TCL Electronics is a world-leading consumer electronics company that covers display, innovative and internet businesses." TCL Electronics' 2024 Annual Report at 3. That business includes manufacturing display products, including TVs, phones, and/or tablets, and selling, offering to sell, and importing those display products in the United States. In its 2024 Annual Report, TCL Electronics stated that "the Group and its subsidiaries … were mainly involved in the manufacture and sale of television ('TV') sets, smartphones, smart connective devices, smart commercial display and smart home products … ." *Id.* at 144 (emphasis added).[1] And "[t]he Group continued to expand and deepen the coverage of

---

[1] In its 2024 Annual Report, dated March 21, 2025, TCL Electronics refers to itself as the "Company." And it refers to the "Group" as "collectively the Company and its subsidiaries." *Id.* at 144.

4

key channels in multiple regions such as North America, Europe and Emerging Market, driving TCL TV to rank among the top three in terms of shipment in nearly 20 countries around the world." *Id.* at 27.

8.  Specific to the United States, TCL Electronics has previously sought to increase its market share and competitiveness of display products, including TVs, phones, and/or tablets, "through a series of effective localisation tactics." *Id.* at 32. For example, "the Group collaborated with influential local brands like NFL, integrating TCL brand with local culture and bringing North American consumers closer through sports marketing, which effectively increased brand awareness and reputation." *Id.* "The Group also proactively optimised channel layouts and product structure to better meet the diverse demand of North American consumers." *Id.* And "for market share in terms of retail sales volume, TCL TV maintained a top two position in the U.S." *Id.*

9.  On information and belief, TCL Electronics has a global supply chain for selling and importing display products, including TVs, phones, and/or tablets in the United States. As stated in its 2024 Annual Report, "the Group will further optimise its global supply chain, logistics, and service systems to improve operational efficiency." *Id.* at 40. And TCL Electronics further stated "[a]dhering to a strategic direction prioritising efficiency, the Group continued to optimise its supply chain, logistics and service capabilities, and partner ecosystem through globalisation, enhancing its global operational capabilities, and improving operational efficiency. During the year, the Group's inventory turnover days was 65 days, down by 3 days year-on-year, demonstrating robust and comprehensive operational capabilities and financial strength, laying a solid foundation for the Group's sustainable development in the future." *Id.* at 27.

10.  On information and belief, TTE Technology, Inc., d/b/a TCL North America ("TTE") is a Delaware corporation with its principal place of business at 189 Technology Drive,

Irvine, California 92618. TTE's website, product literature, and product labels demonstrate that TCL sells for importation, imports, offers for sale, and/or sells after importation accused display products (e.g., TVs, phones, and/or tablets) that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TTE is a wholly owned subsidiary of TCL Electronics. On information and belief, TCL Electronics owns, directs, and controls TTE. On information and belief, TTE sells, offers to sell and/or imports accused consumer display products (e.g., TCL TVs, phones, tablets) in the United States. *See, e.g.*, https://us.tcl.com/ (offers to sell and advertisements for accused TCL branded display products).

11. TCL Communication Tech. On information and belief, TCL Communication Tech. is a limited liability company registered in the People's Republic of China, with its principal place of business located at 22/F, TCL Technology Building, No. 17, the Huifeng Third Road, Zhongkai Hi-Tech Development District, Huizhou City, Guangdong, PRC, 516006. On information and belief, TCL Communication makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, On information and belief, TCL Communication Tech. is a wholly owned subsidiary of TCL Electronics. On information and belief, TCL Electronics owns, directs, and controls TCL Communication Tech.

12. TCL Communication. On information and belief, TCL Communication is a corporation duly organized and existing under the laws of China, having an address of 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Communication makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCL Communication is a

wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls TCL Communication.

13.   TCT Mobile. On information and belief, TCT Mobile is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from its corporate headquarters at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCT Mobile makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCT Mobile is a wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls TCL Communication.

14.   On information and belief, TCT Mobile (US) Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 25 Edelman, Suite 200, Irvine, California, 92618 in Orange County. On information and belief, TCT Mobile (US) Inc. sells, offers to sell and/or imports accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs in the United States. On information and belief, TCT Mobile (US) Inc. is a wholly owned subsidiary, directly or indirectly, of TCT Mobile. On information and belief, TCT Mobile owns, directs, and controls TCT Mobile (US) Inc.

15.   Huizhou TCL Mobile. On information and belief, Huizhou TCL Mobile is a corporation duly organized and existing under the laws of the People's Republic of China, and conducts business from its corporate headquarters at 86 Hechang 7th West Road, Zhongkai Hi-Tech Development Zone, Huizhou, Guangdong 516006, China. On information and belief, Huizhou TCL Mobile makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On

information and belief, Huizhou TCL Mobile is a wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls Huizhou TCL Mobile.

16.      TCL Mobile HK. On information and belief, TCL Mobile HK is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from a principal place of business at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Mobile HK makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCL Mobile HK is a wholly owned subsidiary of Huizhou TCL Mobile. On information and belief, Huizhou TCL Mobile owns, directs, and controls TCL Mobile HK.

17.      TCL Industries. On information and belief, TCL Industries is a company registered in China. On information and belief, TCL Industries' principal place of business is located at 9/F, TCL Electronics Tower, Building D4, TCL International E City, 1001 Zhongshanyuan Road, Nanshan District, Shenzhen City, China. On information and belief, TCL Industries owns and controls, directly or indirectly, each of the other named Defendants.

18.      TCL Industries is the "ultimate holding company of the Company [TCL Electronics]." *Id.* at 144. As such, upon information and belief, TCL Industries controls or derives substantial revenue from the activities of TCL Electronics, including its manufacture of televisions, phones, and tablets for sale and importation into the United States. According to its own annual report, TCL Industries "focuses on the smart device business covering nearly all categories of smart consumer electronic products and services, ranging from displays, to smart appliances, innovative business and home Internet … ." TCL Industries 2023 Annual Report at 7.

The same annual report explains that "TCL Industries has been expanding its footprint in the international markets, creating a robust global supply chain system. With over 60,000 employees across Asia, Americas, Europe and Oceania … ." *Id.*

19.     The 2023 Annual Report states that, "[a]s an active player in the display industry, TCL Industries continued to improve its smart display technologies for applications in smart home, smart life, smart security, smart education, smart conference room, smart energy consumption management, and more. TCL's high-end displays enable a more convenient and efficient living and working experience for consumers." *Id.* at 11.

20.     On information and belief, each of the named Defendants are part of an interrelated group of companies that together comprise one of the world's largest manufacturers and/or distributors of televisions, phones, and TFT-LCDs/LCMs and one of the leading sellers of televisions and smartphones in the United States, including the TCL brands; these entities are therefore collectively referred to herein as "TCL." For example, TCL refers to itself and its interrelated companies as the "Group," such as in its 2023 Annual Report, describes itself as "a world-leading consumer electronics company." *See also, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id.* ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id.* ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

21.     Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing their respective subsidiaries, affiliates, distributors, suppliers, business partners retail partners, and customers in the making, using,

selling, offering for sale, and/or importing throughout the United States, including within this District, the following products accused of infringement (the "Accused Products"):

- CSOT thin-film transistor liquid crystal displays ("TFT-LCDs") for display products;

- CSOT liquid crystal modules comprising TFT-LCDs (collectively, "LCMs") for display products;

- Products comprising CSOT TFT-LCDs or LCMs;

- Products comprising TFT-LCDs; and

- Components of the foregoing.

22.    On information and belief, TCL Electronics and/or TCL Industries (as well as other named Defendants) direct and control TCL Technology, TCL CSOT, and Wuhan CSOT (and have controlled), as well as many other subsidiaries and affiliates, including the named Defendants. On information and belief, TCL Technology, TCL CSOT, and Wuhan CSOT are, and have been, agents of TCL Electronics and/or TCL Industries (as well as other named Defendants). On information and belief, these companies share the same offices, leadership, employees, and business. At the direction and control of TCL Electronics and/or TCL Industries (as well as other named Defendants), TCL Technology, TCL CSOT, and Wuhan CSOT makes (and has made) and supplies (and has supplied) TFT-LCDs and LCMs that are (and have been) incorporated into end user products by TCL Electronics and/or TCL Industries (as well as other named Defendants). *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id*. ("we create innovative display technologies and develop new production

10

techniques for phones and TVs."); *see also id.* ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

23.     On information and belief, each of Defendants and other TCL companies are, and have been, agents of TCL Electronics and/or TCL Industries. For example, each of the Defendants and their subsidiaries use the same logo, further emphasizing that these companies are alter egos and/or agents of one another. All TCL entities, including the named Defendants and each of their respective affiliates, parents, and subsidiaries, are related companies, affiliates, and have more than close relationships with one another.

24.     On information and belief, Defendants, including along with other foreign and U.S.-based subsidiaries or agents (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Defendants) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Defendants conduct business in the United States, including importing, distributing, and selling the Accused Products that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district.

25.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products with distributors and customers operating in and maintaining a significant business presence in the U.S., Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

26.     Defendants operate (and have operated) in agency with its respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this District and the U.S. nationally. TCL and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail

11

partners, suppliers, and customers, purposefully direct (and has directed) the Accused Products into established distribution channels within this District and the U.S. nationally.

27.    On information and belief, TCL, including its respective U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. TCL and its U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

28.    On information and belief, the Defendants share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and infringing product lines and products involving related technologies. On information and belief, Defendants operate (and have operated) as a single business entity and/or in concert with their respective affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to

manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Accused Products in the United States, including in the State of Texas generally and this District in particular. *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id*. ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id*. ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

29. On information and belief, Defendants and their U.S. and foreign subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

30. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Defendants are operating in (and have operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, Defendants have done (and do) business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

31. Plaintiff incorporates paragraphs 1 through 30 herein by reference.

32. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

33. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

34.     Venue is proper for Defendants in this District pursuant to 28 U.S.C. §§ 1391(c). Defendants are foreign entities and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

35.     This Court has general and specific personal jurisdiction over the Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) the Defendants have done and continue to do business in Texas and/or (ii) the Defendants have, directly and through intermediaries, distributers, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by Internet sales and/or sales via business partners, retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and District (including, as relevant, in the past), including: (A) conducting at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

36.     In addition, Defendants have subsidiaries and employees in the United States.

14

37.    In addition, Defendants are aware that the Accused Products are shipped to, offered for sale, sold, and used in, the United States given that they obtain UL Solutions and FCC certifications for the Accused Products so that they comply with the laws and regulations of the United States For example, an Accused Product Lenovo ThinkBook includes Accused Product CSOT model no. MNF601EA1-1, which includes a UL Solutions mark indicating compliance with the laws and regulations of the United States:



In another example, an Accused Product the TCL 32S327 TV includes an FCC mark indicating compliance with the laws and regulations of the United States:



Also, given the long history of CSOT as one of the main suppliers of display components offered by TCL and incorporated in third party end user electronic devices, TCL has knowledge that it and third party customers have substantial operations in the United States, as well as substantial market share in the United States market for LCD displays; Defendants are well-aware that the Accused Products are destined for the United States and Texas (e.g., via the such entities' supply chains, distributers, retailers, etc.). Indeed, the U.S. market for the Accused Products is substantial:

15



38.     This Court has personal jurisdiction over each of the Defendants, directly or through agents, intermediaries, distributors, importers, business partners, customers, subsidiaries, and/or consumers. Through direction and control (including, as relevant, in the past) of such subsidiaries, affiliates, business partners, distributors, retail partners, agents, and/or customers, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over each of the Defendants would not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendants compensate their U.S.-based subsidiaries and/or agents for their sales and/or technical support services in the United States. As such, Defendants have a direct financial interest in their U.S.-based subsidiaries and/or agents, and/or partners, distributers, or customers, and vice versa.

39.     Personal jurisdiction is proper because each of the Defendants has committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, inter alia, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

16

40. Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiff who resides in this District.

41. In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

42. For example, the websites of Defendants and their U.S.-based subsidiaries advertise the type of components and Accused Products that are infringing in this case:



https://en.tclcsot.com/products/326.html; *see also* https://us.tcl.com/:



43. Personal jurisdiction also exists specifically over Defendants because Defendants, directly or through affiliates, subsidiaries, business partners, agents, and/or intermediaries, transact business (or have transacted business) in this State or purposefully directed business at this State

by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

44.    To the extent Defendants are not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendants in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

45.    In addition, Defendants, directly or through affiliates, subsidiaries, agents, and/or intermediaries, have placed infringing products into the stream of commerce knowing they would be sold and used in Texas, and economically benefit from the retail sale of infringing products in this State, including in this District.

46.    Defendants have advertised its infringing products to customers in Texas and this District through its website.

47.    On information and belief, Defendants control (or have controlled) or otherwise direct (or directed) and authorizes (or authorized) all activities of their respective U.S.-based (or foreign-based with the knowledge that the Accused Products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Defendants researched, designed, developed, and manufactured the Accused Products, and then directed their respective U.S.-based (and/or foreign-

18

based) sales subsidiaries, distributers, business partners agents, and/or others to import, distribute, offer for sale, and sell the Accused Products in the United States. See, e.g., United States v. Hui Hsiung, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, Defendants conducted infringing activities, and Defendants' U.S.-based (and foreign-based) sales subsidiaries and/or distributers and/or agents and/or business partners conducted infringing activities on behalf of Defendants.

48.     On information and belief, Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Defendants substantially the same business advantages that it would have enjoyed if Defendants conducted their business through its own offices or paid agents. Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or distributers and/or agents were authorized to import, distribute, sell, and offer for sale Defendants' products, including the Accused Products, as well as their components and processes related to the same, on behalf of Defendants. For example, Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Defendants' global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

49.     Via Defendants' alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas

including within this District. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute an offer to sell under § 271(a)).

50.    On information and belief, Defendants have placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Defendants have, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

51.    The minimum contacts test is satisfied because Defendants deliver products (e.g., TFT-LCDs and/or LCMs and/or TVs comprising LCMs and/or TFT-LCDs) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)). For example, and on information and belief (and as provided for herein), Defendants import, and/or have imported and/or shipped infringing Accused Products into the United States through and with their respective U.S. subsidiaries and/or

affiliates and/or agents and/or supply chain partners and/or customers. Defendants supply their Accused Products (e.g., TFT-LCDs and/or LCMs and/or TVs, phones, and/or tablets comprising CSOT TFT-LCDs and/or LCMs) to their customers, subsidiaries, affiliates, agents, and/or distributors knowing that the CSOT TFT-LCDs and/or LCMS will be incorporated into accused downstream display products (e.g., TVs, phones, tablets) and TCL TVs, phones and/or tablets that are offered for sale, sold, imported, and/or used by Defendants, their customers, Best Buy Walmart, and/or Amazon in the United States and this District. The Accused Products were (and are) directed to this District and were (and are) available for purchase in this District via retailers, such as Best Buy, Walmart, and Amazon. The lengthy and complex distribution chain does not insulate Defendants from suit in Texas.

52.    Defendants intentionally placed and place CSOT TFT-LCDs and/or LCMs in third party display products (e.g., ViewSonic and Lenovo products) and/or TCL display products (e.g., TVs, phones, and/or tablets) in a distribution chain flowing from Asia to the United States, Texas, and this District. For example, Defendants intentionally place the CSOT TFT-LCDs and/or LCMs and/or display products in a distribution or supply chain knowing that such Accused Products ultimately arrive in the United States market and this District through, at least, its direct and/or indirect customers' monitors, laptops, TVs, phones, and/or tablets as well as TCL monitors, phones, and/or tablets. Defendants, through their sales of TCL display products (e.g., TVs, phones, and/or tablets and/or CSOT TFT-LCDs and/or LCMs for application in downstream display devices, such as TVs, monitors, laptops, phones and/or tablets knew (or should have reasonably known) the likely destination of the products, where Defendants' conduct and connections with Texas and this District were such that each of the Defendants should have reasonably anticipated being brought to court in this District. Indeed, Defendants' TFT-LCDs and or LCMs and the

respective downstream display devices, including TCL TVs, laptops, and/or monitors, include a UL Solutions mark indicating compliance with the laws and regulations of the United States further evidencing that Defendants knew or should have known that its products were destined for the United States and this District.

53.    Moreover, Defendants are the assignee of a substantial number of United States patents and patent applications, including use of U.S. patent counsel to procure such patents in their name. Thus, Defendants sought out the United States market, evidenced by seeking patent protection in the United States.

54.    Also by way of example, and on information and belief, Defendants have (and have had) U.S. based (and/or foreign-based) employees that work in connection with the Accused Products.

55.    TCL, including CSOT, have and had a commercial relationship with significant players in the electronic display industry (e.g., ViewSonic and Lenovo), and TCL, including CSOT, access the Texas consumer-electronics market vis-à-vis that relationship. Given TCL's relationship with such entities, which are behemoths for display products in the United States market, jurisdiction in this Court is fair and reasonable. Furthermore, TCL accesses the Texas consumer-electronics market via TCL display products (e.g., TVs, phones, and/or tablets), such that jurisdiction in this Court is fair and reasonable for TCL.

56.    In the alternative, the Court has personal jurisdiction over each of the Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, each of the Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over each of the Defendants is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given

each of the Defendants' purposeful availment from the sales of TCL display products (e.g., TVs, phones, tablets) and third party display products (e.g., TVs, monitors, laptops, phones, tablets) incorporating CSOT's TFT-LCDs and/or LCMs sold in the Unites States and this District.

## JOINDER

57.    Plaintiff incorporates paragraphs 1 through 56 herein by reference.

58.    Joinder is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299 at least because Defendants' infringing conduct alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, or portions thereof, and questions of fact common to all Defendants will arise in this action.

59.    As to the Asserted Patents, the Accused Products comprising at least TCL phones and/or tablets implicate each of the named Defendants. Furthermore, the CSOT TFT-LCDs and LCMs are common to all Defendants' infringement of each of the Asserted Patents. Thus, on information and belief, each of the Defendants infringe the same Asserted Patents for having made, used, imported, offered for sale, and/or sold, and/or induced others to make, use, import, offer for sale, and sell CSOT TFT-LCDs or products containing CSOT TFT-LCDs. Thus, on information and belief, CSOT TFT-LCD technology is a common issue for each Defendants' infringement of products containing CSOT TFT-LCDs, and the factual question of infringement related to CSOT TFT-LCDs will thus substantially overlap for all Defendants regarding such products.

60.    Further, on information and belief, there are common facts as to sales, importation, distribution, and marketing materials associated with the CSOT TFT-LCDs and the TCL display products containing the CSOT TFT-LCDs.

61.    Additionally, on information and belief, there are common facts as to the distribution, supply chain, knowledge, and inducement related to CSOT TFT-LCDs and the TCL display products containing CSOT TFT-LCDs destined to be sold, used, imported, offered for sale, and/or sold in the United States.

## COUNT I
### (Infringement of U.S. Patent No. 6,525,798)

62.    Plaintiff incorporates paragraphs 1 through 61 herein by reference.

63.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

64.    Plaintiff is the owner of the '798 patent with all substantial rights to the '798 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

65.    The '798 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

66.    Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '798 patent in this District and elsewhere in Texas and the United States.

67.    Defendants directly infringed the '798 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '798 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '798 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '798 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers,

24

subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '798 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '798 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same

company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

68.     Furthermore, TCL Industries directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

69.     Furthermore, TCL Electronics directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same

company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

70.     Additionally, TCL Communication directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

71.     Additionally, TCL Communication Tech. directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries,

related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

72.   Additionally, TCT Mobile directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

73.   Additionally, Huizhou TCL Mobile directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further,

Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

74.     Additionally, TCL Mobile HK directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

75.     Furthermore, TCL Technology directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further,

29

TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

76.     Additionally, Wuhan CSOT directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

77.     Additionally, Huizhou CSOT directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement

of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

78.     Additionally, TCL CSOT directly infringed the '798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

79.     For example, Defendants infringed claim 1 of the '798 patent. The products accused of infringing the '798 patent comprise a liquid crystal display unit. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal display unit:



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprise a liquid crystal display unit:



80.     The products accused of infringing the '798 patent comprise a plurality of pixels each including a plurality of common electrodes, a plurality of pixel electrodes, and a semiconductor switching element. The products accused of infringing the '798 patent also

comprise an array substrate having the pixels, a plurality of scanning signal lines, and a plurality of video signal lines for outputting signals to the pixel electrodes arranged on the surface thereof. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



81.    The products accused of infringing the '798 patent comprise a counter substrate arranged opposite the array substrate, and a liquid crystal layer sandwiched between the array substrate and the counter substrate. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



82.      Each of the pixels in the products accused of infringing the '798 patent includes a plurality of electrode pairs, each electrode pair comprising one of the common electrodes and an adjacent one of the pixel electrodes, and at least one of the electrode pairs differs from other electrode pairs in a thickness of its common electrode or a thickness of its pixel electrode. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



83.     At a minimum, each of the Defendants has known about the '798 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside IP LLC ("Parkside") was the patent owner of the '798 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '798 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '798 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '798 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and

36

belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '798 patent from at least the foregoing dates that TCL CSOT was on notice of the '798 patent as a result of receiving notice from TCL CSOT.[2]

84.     At a minimum, each of the Defendants has known about the '798 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '798 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '798 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '798patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at

---

[2] *See e.g., Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00495-JRG-RSP, 2025 U.S. Dist. LEXIS 206502, at *28-30 (E.D. Tex. Oct. 3, 2025) ("where there is a close relationship between a non-defendant third party and a defendant, giving notice to the former can constitute notice to the latter, at least insofar as it creates a genuine dispute of material fact. … we are satisfied that SDC's relationship with the named Defendants here suffices, such that whether Plaintiff's notice to the former constitutes notice to Defendants is an issue that the trier of fact will resolve."); *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan of N. Am.*, No. 11-11039, 2012 U.S. Dist. LEXIS 117941, at *14 (E.D. Mich. Aug. 21, 2012) ("Defendants argue the sheer implausibility of an automotive supplier informing its customers that it is supplying infringing products to them. Without a fully developed factual record however, the court cannot conclude that it is unreasonable to infer that defendants Toyota and Nissan received pre-suit knowledge of the patents-in-suit from their suppliers. A reasonable inference can be made that a supplier of an accused infringing instrumentality, with direct notice of the patents-in-suit, discussed said patents and the likelihood of infringement of these patents with its customers. It is also a reasonable inference that a Japanese parent company, Honda Motor Company, which received NISTAC's letter concerning the patents-in-suit, would communicate with its United States subsidiary, American Honda, about these patents and potential infringement thereof.").

jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '798 patent from at least the foregoing dates that TCL Technology was on notice of the '798 patent as a result of receiving notice from TCL Technology.[3]

85.    Further, on information and belief, TCL's conduct before the United States Patent and Trademark Office and foreign offices, suggest that they were aware of the '798 patent prior to receiving any letters. For example, in prosecuting US Patent No. 9,110,335 and US Patent Publication No. 20170160584, TCL CSOT has known of the '798 patent.

86.    Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

---

[3] *See* FN 2, *supra.*

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

87.     On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '798 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '798 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced

distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

88.    On information and belief, despite having knowledge of the '798 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '798 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '798 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '798 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers

40

provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '798 patent in the United States.

89. Defendants' infringement of the '798 patent has been willful and with full knowledge of the '798 patent. Upon information and belief, despite having knowledge of the '798 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '798 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '798 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

90. Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

91. On information and belief, the prior patent owners of the '798 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '798 patent.

## COUNT II
### (Infringement of U.S. Patent No. 6,787,829)

92.     Plaintiff incorporates paragraphs 1 through 91 herein by reference.

93.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

94.     Plaintiff is the owner of the '829 patent with all substantial rights to the '829 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

95.     The '829 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

96.     Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '829 patent in this District and elsewhere in Texas and the United States.

97.     Defendants directly infringed the '829 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '829 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '829 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '829 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of

the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '829 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '829 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

98.    Furthermore, TCL Industries directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents,

43

including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

99.     Furthermore, TCL Electronics directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

100.    Additionally, TCL Communication directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

101.    Additionally, TCL Communication Tech. directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially

45

the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

102. Additionally, TCT Mobile directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

103. Additionally, Huizhou TCL Mobile directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as

46

an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

104.    Additionally, TCL Mobile HK directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

105.    Furthermore, TCL Technology directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as

an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

106. Additionally, Wuhan CSOT directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

107. Additionally, Huizhou CSOT directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT

48

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

108.    Additionally, TCL CSOT directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

109.    For example, Defendants infringed claim 1 of the '829 patent. The products accused of infringing the '829 patent comprise a liquid crystal display panel. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal display panel:

49



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no.

BLU6702-1, such that each comprises a liquid crystal display panel:



110.    The products accused of infringing the '829 patent comprise an array substrate, a

counter substrate opposing the array substrate, and a liquid crystal layer sandwiched between a

surface of the array substrate and a surface of the counter substrate. For example, an examination

of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



111.    The products accused of infringing the '829 patent comprise a plurality of image signal lines located over the surface of the array substrate that is in contact with the liquid crystal layer, the image signal lines being aligned in a same direction. The products accused of infringing the '829 patent comprise a plurality of scanning signal lines located over the surface of the array substrate over which the image signal lines are located, the scanning signal lines being located perpendicular to the image signal lines. As shown above, the array substrate is in contact with the liquid crystal layer. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



112.    The products accused of infringing the '829 patent comprise a line-shaped pixel electrode located in each of pixel regions of the array substrate that is surrounded by the image signal lines and the scanning signal lines, the pixel electrode located parallel to the image signal lines. The products accused of infringing the '829 patent also comprise a common electrode located in each of the pixel regions and located parallel to the pixel electrode. For example, an

examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



113.    The products accused of infringing the '829 patent comprise a switching element for electrically connecting the pixel electrode and one of the image signal lines in response to a

53

signal received from the scanning signal lines. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



114.    The products accused of infringing the '829 patent are configured such that of the pixel electrode and the common electrode, the electrode that is located adjacent to and parallel to

one of the image signal lines or one of the scanning signal lines comprises an opaque conductor, and at least one of the other electrodes comprises a transparent conductor. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



115.    At a minimum, each of the Defendants has known about the '829 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '829 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '829 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '829 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '829 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on

56

information and belief, each of the other named Defendants were on notice of the '829 patent from at least the foregoing dates that TCL CSOT was on notice of the '829 patent as a result of receiving notice from TCL CSOT.[4]

116.    At a minimum, each of the Defendants has known about the '829 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '829 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '829 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '769 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '829 patent from at least the foregoing dates that TCL Technology was on notice of the '829 patent as a result of receiving notice from TCL Technology.[5]

117.    Further, on information and belief, TCL's conduct before the United States Patent and Trademark Office and foreign offices, suggest that they were aware of the '829 patent prior to

---

[4] *See* FN 2, *supra.*
[5] *See* FN 2, *supra.*

receiving any letters. For example, in prosecuting Chinese Patent No. CN102663965B, TCL CSOT has known of the '829 patent.

118. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

### INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

119. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '829 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '829 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating

advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL

Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

120.   On information and belief, despite having knowledge of the '829 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '829 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '829 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '829 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '829 patent in the United States.

121.   Defendants' infringement of the '829 patent has been willful and with full knowledge of the '829 patent. Upon information and belief, despite having knowledge of the '829 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '829 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '829 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

122.    Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

123.    On information and belief, the prior patent owners of the '829 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '829 patent.

## COUNT III
### (Infringement of U.S. Patent No. 6,801,293)

124.    Plaintiff incorporates paragraphs 1 through 123 herein by reference.

125.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

126.    Plaintiff is the owner of the '293 patent with all substantial rights to the '293 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

127.    The '293 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a) and/or §271(g))

128.    Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '293 patent in this District and elsewhere in Texas and the United States.

61

129.    Defendants directly infringed the '293 patent via 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '293 patent in the United States. For example, Defendants directly infringed the '293 patent via 35 U.S.C. § 271(g) by having offered for sale, sold, imported, and/or used within the United States those Accused Products, their components and processes, and/or products containing the same that were made by the process of at least Claim 1 of the '293 patent. For example, Defendants, either by themselves and/or via an agent and/or in concert, directly infringed the '293 patent by offering for sale, selling, using, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '293 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Defendants sold and/or made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '293 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries and related companies (e.g., any TCL company), including by selling and offering for sale the Accused Products directly to such subsidiaries and related companies and importing the Accused Products into the United States for such subsidiaries and related companies. Such subsidiaries conduct

activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, used, and/or imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, related companies, and/or consumers. Further, each of the Defendants is vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, Defendants, their respective subsidiaries and related companies are essentially the same company, and Defendants have the right and ability to control its subsidiaries and related companies' infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

130.    Furthermore, TCL Industries directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

131.    Furthermore, TCL Electronics directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

132.    Additionally, TCL Communication directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same

company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

133.   Additionally, TCL Communication Tech. directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

134.   Additionally, TCT Mobile directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

65

and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

135.    Additionally, Huizhou TCL Mobile directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

136.    Additionally, TCL Mobile HK directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or

affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

137. Furthermore, TCL Technology directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

138. Additionally, Wuhan CSOT directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT

67

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

139.   Additionally, Huizhou CSOT directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

140.   Additionally, TCL CSOT directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '293 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling,

and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

141. The products made using the method of manufacturing accused of infringing at least claim 1 of the '293 patent comprise an in-plane electric field mode liquid crystal element having a pair of substrates. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each were made by a method for manufacturing an in-plane electric field mode liquid crystal element having a pair of substrates:



counter substrate    Array substrate



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each were made by a method for manufacturing an in-plane electric field mode liquid crystal element having a pair of substrates:



counter substrate    Array substrate



142.    At least one of the substrates on the products made using the method of manufacturing accused of infringing the '293 patent includes pixel electrodes for generating an in-plane electric field, common electrodes, and an insulating film for insulating these electrodes from one another. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



143.    The products made using the method of manufacturing accused of infringing the '293 patent include orientation films provided on the inner side of one or both of the substrates and a liquid crystal layer sandwiched between the substrates. For example, the orientation film is evidenced by the ability of the liquid crystal molecules to align. Further, applying a UV light to a polymer-based orientation film will cause the film to glow. An examination of the array substrate of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates the presence of an orientation film that glows under UV light:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:





144.    The products made using the method of manufacturing accused of infringing the '293 patent were made via a stripping step of stripping, by rubbing, a predetermined portion of the orientation film on the electrodes or lines once formed on the inner side of one or both of the substrates. On information and belief, the orientation film is stripped via rubbing the gate lines and/or common lines on the inner side of the array substrate. The particular details are within TCL's possession, custody, and control. *See Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 U.S. Dist. LEXIS 28100, at *18 (E.D. Tex. Mar. 18, 2011) ( "precisely how [Defendant's] products work… is clearly more accessible to [Defendant] than to Plaintiff … the mere fact that allegations begin with the statement 'on information and belief' will not automatically render them insufficient"); *Digitaldoors, Inc. v. Comerica Bank*, No. 2:23-cv-00541-JRG-RSP, 2024 U.S. Dist. LEXIS 177294, at *6-7 (E.D. Tex. Sep. 9, 2024) ("[Plaintiff] is expected to flesh out its understanding of the Accused Products during the duration of this case but, at the pleading stage, it is sufficient that [Plaintiff] pleaded enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged" patent infringement.").

145.    In addition, Defendants have imported into the United States, offered to sell, sold or used within the United States infringing products, including those identified herein, that are manufactured by patented methods claimed in the '293 patent, including at least claim 1, as articulated herein. Such infringing manufacturing process has been performed during the term of the '293 patent, without a license to the Defendants for such infringement, and such accused and infringing products have not been materially changed by any subsequent process, nor have such accused and infringing products become a trivial and/or non-essential component of another product.

146.    At a minimum, each of the Defendants has known about the '293 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '293 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '293 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '293 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '293 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on

information and belief, each of the other named Defendants were on notice of the '293 patent from at least the foregoing dates that TCL CSOT was on notice of the '293 patent as a result of receiving notice from TCL CSOT.[6]

147.    At a minimum, each of the Defendants has known about the '293 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '293 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '293 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '293 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '293 patent from at least the foregoing dates that TCL Technology was on notice of the '293 patent as a result of receiving notice from TCL Technology.[7]

148.    Further, on information and belief, TCL's conduct before the United States Patent and Trademark Office and foreign offices, suggest that they were aware of the '293 patent prior to

[6] See FN 2, supra.
[7] See FN 2, supra.

76

receiving any letters. For example, in prosecuting Chinese Patent No. CN102436094B, TCL CSOT has known of the '293 patent.

149. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

150. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '293 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '293 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating

advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL

Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

151.   On information and belief, despite having knowledge of the '293 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '293 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '293 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '293 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '293 patent in the United States.

152.   Defendants' infringement of the '293 patent has been willful and with full knowledge of the '293 patent. Upon information and belief, despite having knowledge of the '293 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '293 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '293 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

153.    Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

154.    On information and belief, the prior patent owners of the '293 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '293 patent.

## COUNT IV
### (Infringement of U.S. Patent No. 6,816,208)

155.    Plaintiff incorporates paragraphs 1 through 154 herein by reference.

156.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

157.    Plaintiff is the owner of the '208 patent with all substantial rights to the '208 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

158.    The '208 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

159.    Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '208 patent in this District and elsewhere in Texas and the United States.

160.    Defendants directly infringed the '208 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '208 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '208 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '208 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '208 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '208 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to

such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

161. Furthermore, TCL Industries directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

162.    Furthermore, TCL Electronics directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

163.    Additionally, TCL Communication directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same

company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

164.   Additionally, TCL Communication Tech. directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

165.   Additionally, TCT Mobile directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

84

and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

166.    Additionally, Huizhou TCL Mobile directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

167.    Additionally, TCL Mobile HK directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or

affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

168.    Furthermore, TCL Technology directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

169.    Additionally, Wuhan CSOT directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

170.   Additionally, Huizhou CSOT directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

171.   Additionally, TCL CSOT directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling,

and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

172.    For example, Defendants infringed claim 1 of the '208 patent. The products accused of infringing the '208 patent comprise a liquid crystal display device. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises an active matrix liquid crystal display device:



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprises an active matrix liquid crystal display device:



173. The products accused of infringing the '208 patent comprise a capacitive accumulation portion formed by overlapping a pixel electrode, an insulating layer and a common electrode for each pixel area, and a non-electrode area in a part of the pixel area, which is not covered with a pixel electrode. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



174.    The products accused of infringing the '208 patent are configured such that a peripheral shape of said capacitive accumulation portion on a side contacting said non-electrode

90

area is substantially the same between respective pixels, and a value of a storage capacity in said capacitive accumulation portion of one pixel at a signal feeding side is larger than that of an adjacent pixel at a termination side, wherein the value of the storage capacity in said capacitive accumulation portion of the one pixel is different from that of the adjacent pixel by varying an aperture in the common electrode of the adjacent pixel with respect to the aperture of the one pixel. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



175.    At a minimum, each of the Defendants has known about the '208 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '208 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '208 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '208 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '208 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '208 patent from

at least the foregoing dates that TCL CSOT was on notice of the '208 patent as a result of receiving notice from TCL CSOT.[8]

176.    At a minimum, each of the Defendants has known about the '208 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '208 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '208 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '208 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '208 patent from at least the foregoing dates that TCL Technology was on notice of the '208 patent as a result of receiving notice from TCL Technology.[9]

177.    Further, on information and belief, TCL's conduct before the United States Patent and Trademark Office and foreign offices, suggest that they were aware of the '208 patent prior to receiving any letters. For example, in prosecuting Chinese Patent No. CN102402043A, TCL CSOT has known of the '208 patent.

---

[8] *See* FN 2, *supra.*
[9] *See* FN 2, *supra.*

178. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

### INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

179. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '208 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '208 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United

States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/.  In  another  example,  Defendants  actively  induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused

95

display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

180. On information and belief, despite having knowledge of the '208 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '208 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '208 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '208 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '208 patent in the United States.

181. Defendants' infringement of the '208 patent has been willful and with full knowledge of the '208 patent. Upon information and belief, despite having knowledge of the '208 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '208 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '208 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is

entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

182.   Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

183.   On information and belief, the prior patent owners of the '208 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '208 patent.

<u>COUNT V</u>
**(Infringement of U.S. Patent No. 6,850,303)**

184.   Plaintiff incorporates paragraphs 1 through 183 herein by reference.

185.   This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

186.   Plaintiff is the owner of the '303 patent with all substantial rights to the '303 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

187.   The '303 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

188.   Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '303 patent in this District and elsewhere in Texas and the United States.

189.   Defendants directly infringed the '303 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '303 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '303 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '303 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '303 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '303 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to

98

such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

190. Furthermore, TCL Industries directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

191.    Furthermore, TCL Electronics directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

192.    Additionally, TCL Communication directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same

company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

193.    Additionally, TCL Communication Tech. directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

194.    Additionally, TCT Mobile directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

101

and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

195.    Additionally, Huizhou TCL Mobile directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

196.    Additionally, TCL Mobile HK directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or

affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

197.   Furthermore, TCL Technology directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

198.   Additionally, Wuhan CSOT directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

199.   Additionally, Huizhou CSOT directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.[10]

200.   Additionally, TCL CSOT directly infringed the '303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement

---

[10] *See* FN 2, *supra.*

104

of the '303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.[11]

201.    For example, Defendants infringed claim 1 of the '303 patent. The products accused of infringing the '303 patent comprise a liquid crystal display device. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal display device:




---

[11] *See* FN 2, *supra.*

In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprises a liquid crystal display device:



202.    The products accused of infringing the '303 patent comprise an array substrate, an opposing substrate facing the array substrate, and liquid crystal held between the array substrate and the opposing substrate. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:

106



203.    The products accused of infringing the '303 patent are configured such that the array substrate is provided with a plurality of gate wirings and a plurality of source wirings intersecting each other and a pixel electrode disposed in a region defined by two adjacent gate wirings and two adjacent source wirings. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



204.    The products accused of infringing the '303 patent are configured such that the array substrate is provided with a switching element for switching a voltage applied to the pixel electrode from the source wiring based on a signal voltage fed from the gate wiring. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



205. The products accused of infringing the '303 patent are configured such that the

array substrate is provided with a common wiring formed between the two adjacent gate wirings.

For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-

000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



206.    The products accused of infringing the '303 patent are configured such that the

array substrate is provided with a common electrode being electrically connected to the common

wiring and generating an electric field between the common electrode and the pixel electrode

creating a voltage for driving the liquid crystal. For example, an examination of CSOT's

LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



207.    The products accused of infringing the '303 patent are configured such that the

array substrate is provided with a storage capacity electrode electrically connected to the pixel

electrode. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01

V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



208.    The products accused of infringing the '303 patent are configured such that the

pixel electrode and the storage capacity electrode are layered so as to hold at least some part of the

common wiring in between through an insulating layer. For example, an examination of CSOT's

LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



112

In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



209.    At a minimum, each of the Defendants has known about the '303 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '303 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '303 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '303 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '303 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter

was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '303 patent from at least the foregoing dates that TCL CSOT was on notice of the '303 patent as a result of receiving notice from TCL CSOT.

210.    At a minimum, each of the Defendants has known about the '303 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '303 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '303 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '303 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '303 patent from at least the foregoing dates that TCL Technology was on notice of the '303 patent as a result of receiving notice from TCL Technology.

211.    Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

## INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

212.    On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '303 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '303 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United

States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused

116

display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

213.    On information and belief, despite having knowledge of the '303 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '303 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '303 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '303 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '303 patent in the United States.

214.    Defendants' infringement of the '303 patent has been willful and with full knowledge of the '303 patent. Upon information and belief, despite having knowledge of the '303 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '303 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '303 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is

117

entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

215.   Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

216.   On information and belief, the prior patent owners of the '303 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '303 patent.

## COUNT VI
### (Infringement of U.S. Patent No. 6,906,769)

217.   Plaintiff incorporates paragraphs 1 through 216 herein by reference.

218.   This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

219.   Plaintiff is the owner of the '769 patent with all substantial rights to the '769 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

220.   The '769 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

221.   Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '769 patent in this District and elsewhere in Texas and the United States.

222. Defendants directly infringed the '769 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '769 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '769 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '769 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '769 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '769 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to

such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

223.    Furthermore, TCL Industries directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

224.    Furthermore, TCL Electronics directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

225.    Additionally, TCL Communication directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same

company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

226.   Additionally, TCL Communication Tech. directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

227.   Additionally, TCT Mobile directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

228.   Additionally, Huizhou TCL Mobile directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

229.   Additionally, TCL Mobile HK directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or

affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

230.   Furthermore, TCL Technology directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

231.   Additionally, Wuhan CSOT directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT

124

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

232.   Additionally, Huizhou CSOT directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

233.   Additionally, TCL CSOT directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling,

and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

234.    Defendants infringed claim 1 of the '769 patent. The products accused of infringing the '769 patent comprise a liquid crystal screen display. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal screen display:



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprises a liquid crystal screen display:



235.   The products accused of infringing the '769 patent comprise a first insulating substrate, a second insulating substrate facing the first insulating substrate, and a liquid crystal layer formed between the first and second insulating substrates. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



236.    The products accused of infringing the '769 patent comprise alignment layers formed between the first insulating substrate and the liquid crystal layer and between the second insulating substrate and the liquid crystal layer, respectively, for aligning the liquid crystal layer. For example, an alignment layer, such as a polymer-based orientation film, between the first insulating substrate and the liquid crystal layer is evidenced by applying a UV light to the substrate. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:





237.    The products accused of infringing the '769 patent comprise alignment layers formed between the first insulating substrate and the liquid crystal layer and between the second insulating substrate and the liquid crystal layer, respectively, for aligning the liquid crystal layer. For example, an alignment layer, such as a polymer-based orientation film, between the second insulating substrate and the liquid crystal layer is necessary for the liquid crystal molecules in the Accused Products to align. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



238.    The products accused of infringing the '769 patent comprise a first conductive member which is formed on the first insulating substrate and interposed between the first insulating substrate and its corresponding alignment layer, being in partial contact with the alignment layer and to which a negative voltage is applied, the first conductive member being gate signal lines. For example, in the products accused of infringing the '769 patent gate lines are between the first insulating substrate and the corresponding alignment layer. Negative voltages are applied to the

gate lines to operate the thin film transistors, as can be seen below in an exemplary LCD schematic. For example, an examination of CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:

First insulating substrate





239.    At a minimum, each of the Defendants has known about the '769 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '769 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '769 patent. The First TCL Notice Letter informed TCL CSOT together with

its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '769 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '769 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '769 patent from at least the foregoing dates that TCL CSOT was on notice of the '769 patent as a result of receiving notice from TCL CSOT.[12]

240.    At a minimum, each of the Defendants has known about the '769 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '769 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '769 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '769 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at

---

[12] *See* FN 2, *supra*.

134

jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '769 patent from at least the foregoing dates that TCL Technology was on notice of the '769 patent as a result of receiving notice from TCL Technology.[13]

241.    Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

### INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

242.    On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '769 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-

---

[13] *See* FN 2, *supra.*

mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '769 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions.

https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

243.    On information and belief, despite having knowledge of the '769 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '769 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '769 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '769 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '769 patent in the United States.

244.    Defendants' infringement of the '769 patent has been willful and with full knowledge of the '769 patent. Upon information and belief, despite having knowledge of the '769

137

patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '769 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '769 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

245.    Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

246.    On information and belief, the prior patent owners of the '769 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '769 patent.

## **CONCLUSION**

247.    Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of the Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

248.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case

within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

1. A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

3. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: March 27, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Justin Kimble
Texas Bar No. 24036909
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 North Harwood Street
Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
justin@nelbum.com
bill@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

Attorneys for Plaintiff
**BISHOP DISPLAY TECH LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 27, 2026.

*/s/ Patrick J. Conroy*
Patrick J. Conroy